JAMES T. COLEMAN *v.* YAZOO & MISSISSIPPI VALLEY RAILROAD
COMPANY.

[43 South., 473.]

1. CARRIERS. *Railroads. Passengers. Liability for act of employes.
Conductor's right. Self-defense.*

A conductor of a passenger train has a right to defend himself from
an attack by a passenger, but he has no right to strike a pas-
senger with a pistol for the use of abusive language to him.

2. SAME. *Bystanders. Injuries.*

If a railroad conductor strike a passenger with a loaded pistol, not
in self-defense, but because of the passenger's abusive language,
and the weapon be discharged by the blow, the company will be
liable for damages resulting from the shot to an innocent by-
stander, although the shooting be at a station and the bystander
not a passenger.

3. SAME. *Instructions. Modification.*

If the trial court modify an instruction which was correct as asked,
the party asking it may complain of its erroneous modification
on appeal.

FROM the circuit court of, second district, Coahoma county.
HON. SAMUEL C. COOK, Judge.

Coleman, appellant, was plaintiff in the court below; the
railroad company, appellee, was defendant there.

From a judgment in defendant's favor, the plaintiff appealed
to the supreme court.

The plaintiff sought to recover damages for personal in-
juries caused by the discharge of a pistol in the hands of
Myers, defendant's conductor, who in attempting at a station to
eject a drunken and disorderly passenger from a passenger
train, struck the disorderly passenger over the head with a pistol,
whereby the pistol was discharged, the bullet hitting plaintiff,
an innocent bystander, inflicting a severe wound in his shoulder.
The passenger, a negro, Strayhorn by name, had been drunk,

unruly and insulting in his conduct on the train before reaching the station; the conductor claimed, and there was evidence to that effect, that at the time of the ejection the negro was disorderly and used insulting and abusive language; that as the conductor approached him to put him off the train he made a motion to draw a pistol from his pocket, and then it was the conductor struck him two or three times with a pistol which was discharged by the blows inflicted with it upon the negro's head. A pistol, nor any other deadly weapon, was not found on the negro when arrested immediately after his ejection from the train.

The plaintiff asked the following instructions which were refused:

"(1) The court instructs the jury that if they believe from the evidence that the negro applied violent and abusive epithets to Myers while he was putting him off the train, and that Myers hit him with a pistol, for using said language, and not in self-defense, then they will find for the plaintiff all damages he has sustained resulting from Myers hitting said negro.

"(2) The court instructs the jury that a conductor in charge of a passenger train has a right to defend himself from attack or wanton insult, but he has no right to strike a passenger over the head with a pistol for insulting him."

The court below modified the following instructions asked by plaintiff, the modification being indicated by italics:

"(3) The court instructs the jury to find for the plaintiff all damages he has sustained, unless they believe from the evidence that, at the time Myers struck the negro with the pistol, he then had reason to believe and did believe his own life was in real or apparent danger, or that he was in real or apparent danger of great bodily harm at the hands of the negro with a deadly weapon, *or that Strayhorn then and there applied to the conductor grossly abusive or insulting epithets.*"

"(5) The court instructs the jury that Myers was acting within the scope of his employment and about his master's

business at the time the injury complained of by plaintiff was incurred; and unless they believe from the evidence that Myers was acting in necessary self-defense, or was in imminent danger, real or apparent, of bodily harm at the hands of the negro, Strayhorn, with a deadly weapon, then they will find for plaintiff and assess his damages at such sum as shown by the evidence, not to exceed the amount sued for, *unless they further believe from the evidence that Strayhorn applied to said conductor, at the time he struck him, grossly insulting epithets.*"

The court granted the following defendant's instructions:'

"(2) The court further instructs the jury that under the law the defendant railway company's conductor had an equal right with other private citizens to defend himself against any unprovoked assault or gross insult; and if the jury believe from the evidence that such assault was made upon him, or that he was so insulted by one Strayhorn, who had theretofore been a passenger on the defendant company's train, and that in repelling said assault the conductor used his pistol, which was discharged accidentally and plaintiff accidentally shot, as complained of by him, then the jury must return a verdict in favor of the defendant railway company.

"(3) The court further instructs the jury that the defendant company's conductor had also the right under the law to resent any gross and wanton insult; and if the jury believe from the evidence that one Strayhorn, who had been a passenger on said defendant company's train, grossly and wantonly insulted said conductor, and that he thereupon then and there resented such insult, using such force as was necessary or proper under the surroundings, circumstances, and conditions, the plaintiff cannot then recover for the alleged injury sustained by him, and the jury must return a verdict in favor of the defendant company."

*Brewer & Watkins,* for appellant.

It was error in the lower court to refuse the first two in-

structions, and to modify the third and fifth instructions, asked by the appellant. There was also error in the granting of the second and third instructions asked by the appellee. The lower court evidently acted on the idea that the railroad conductor had a right to strike a passenger with a pistol because of the passenger's use of abusive language toward the conductor. But such is not the law. When and where does the law give to a defendant in a civil cause of action for damages arising out of assault and battery the right to justify himself on the ground that the plaintiff used abusive language toward him? Mere words, no matter how abusive, do not justify an assault. 4 Am. Dig., 873, sec. 10; 3 Cyc., 1077, sec. 8; *Ireland* v. *Elliott,* 5 Iowa, 478; 68 Am. Dec., 715; *Willing* v. *Carpenter,* 15 L. R. A., 853; *Goldsmith* v. *Joy,* 15 Am. St. Rep., 923; *Warner* v. *Talbot,* 60 L. R. A., 336.

Of course abusive language may justify the action of a railroad conductor in removing from the train the passenger guilty of such language, but the removal or ejection must be done in a reasonable manner and without unnecessary force; and under no circumstances does the use of such language justify an assault and battery upon the passenger. *Berkner* v. *Danneburg,* 60 L. R. A. (Ga.), 559; *Berry* v. *State,* 105 Ga., 683.

The words used by the negro passenger, Strayhorn, were about as follows, as shown by the testimony of the conductor, who, being asked the question, " What if anything, did the negro say as he advanced toward you?" answered, "He said, 'You white folks think you are bad, but I'm bad, too.' " The conductor, further, testified that the negro exclaimed to him, "If you or anybody else say I have got a pistol, it is a damn lie." Certainly these words by the negro, Strayhorn, while abusive, gave no right to the conductor to strike the negro, in the absence of necessary self-defense upon the conductor's part. Hence, if in so doing, the conductor's pistol was discharged, and appellant thereby wounded, the railroad company, the conductor's employer, was liable to appellant.

*Harris & Powell,* on the same side.

While under our statute law one party may strike another with a pistol for insulting him, yet he cannot either kill or commit an assault and battery with intent to kill, merely because of insulting language. It was with this view of the law in mind, that the first and second instructions were asked by the plaintiff. The conductor, Myers, had no right to use his pistol, merely because of what the negro said, and if he had not made use of his pistol, the plaintiff, an innocent party, would not have been wounded. For the same reason, it was error to modify the third and fifth instructions asked by the plaintiff. *Warner* v. *Talbot,* 66 L. R. A., 336; *Ireland* v. *Elliott,* 5 Iowa, 76; 68 Am. Dec., 1715; *Willing* v. *Carpenter,* 15 L. R. A., 853; *Goldsmith* v. *Joy,* 15 Am. State Rep., 923; 3 Cyc., 1077.

It was also error in the lower court to grant the second and third instructions asked by defendant, inasmuch as the conductor had no right to use his pistol in belaboring the negro, Strayhorn, merely because of the negro's abusive language. It does not follow, as alleged in these two instructions, that if the pistol was discharged, and the plaintiff accidentally shot, while the conductor was thus striking the negro, the jury must hold the defendant not guilty. We submit further, that while the court erroneously told the jury, in these two instructions, that insulting words constituted an excuse for the conductor's assault and battery with intent to kill, the granting of the two instructions was erroneous for the further reason, that the conductor, himself, testified that he did not make the assault because of the insulting language, but for another reason.

We concede, that if the conductor was threatened with a pistol by the negro, Strayhorn, at the time he struck Strayhorn, the defendant would not be liable, but when the court further told the jury that the conductor was justifiable in striking with a deadly weapon, because of mere words used, then these instructions became erroneous.

It is contended by learned counsel for appellee, that no complaint can be made in this court of the modification of the plaintiff's instructions, because of the fact, that the instructions, as modified, were used in the lower court. If, however, the instructions were correct, as asked, and the modification of the instructions was error, it cannot be contended that plaintiff was estopped from making complaint in this court, because of his use of the instructions in the court below.

*Mayes & Longstreet,* for appellee.

As the statements of plaintiff and his witnesses tended to make out a case of negligent assault, and the testimony of the conductor and the witnesses for the railroad company made out a clear case of justifiable assault, and the jury passed upon the testimony, the verdict should stand, unless there were such errors of law in the trial, available to plaintiff, as to make it the duty of this court to reverse the judgment. Opposing counsel recognize this, and seek to secure a reversal of this cause wholly on alleged errors in the instructions.

The first and second instructions, asked by plaintiff, did not state the law correctly.

In regard to the modification of the third and fifth instructions for the plaintiff, we submit that the appellant is precluded from assigning the same as error, or making any objections thereto, because of the well known rule of this court, that if a party shall use, at the trial, a modified instruction, such party will not be heard afterwards in the appellate court to complain of the modification. This rule is founded in reason and supported by authority. Instructions are not forced on litigants. The use of any instruction is entirely a matter of choice to the practitioner. When the plaintiff made use of the modified instruction, such action on his part precluded him from assigning the modification as error. *Schraag* v. *R. R. Co.,* 84 Miss., 125, s.c., 36 South., 193.

The same reasoning which makes unavailable to appellant

as an assignment of error that the court below may have er-
roneously modified instructions asked for plaintiff, is, from a
different view point, the same proposition which precludes the
appellant from complaining of any error in the instructions
granted to the appellee railroad company, which, as counsel
for appellant contended, practically told the jury that the con-
ductor was authorized to shoot any passenger who cursed him.
This is the same alleged vice of which appellant complains with
respect to the modification of the instructions asked by him.
The plaintiff and the defendant in the trial below, both read
their instructions to the jury, the supposed rule of law being
stated the same way in both sets of instructions.   In other
words, the plaintiff was granted instructions to the jury to
the effect that grossly abusive and insulting words justified the
conductor in the assault, and the defendant was granted in-
structions to the same effect.   Both sides having thus volun-
tarily secured instructions to the jury that the law of the case
was a certain way, both sides are now bound by the rule of law
just as it is stated in the instructions.

Argued orally by *Robert Powell,* for appellant.

WHITFIELD, C. J., delivered the opinion of the court.

The court below plainly erred in refusing the first and second
instructions asked by the plaintiff.   It also plainly erred in
modifying instruction No. three and instruction No. five asked
by the plaintiff, and it also clearly erred in giving instruction
No. two and instruction No. three for the defendant.   The
point made, that the appellant cannot complain of the modifica-
tion of his instructions, No. three and No. five is not well taken,
since the instructions were correct as asked, and the modifica-
tion was error.   *Miss. Central R. Co.* v. *Hardy,* 88 Miss.,
732, s.c., 41 South., 505.

*Reversed and remanded.*