ISHAM B. STONE *v.* ISAAC R. HEGGIE.

1. ASSAULT AND BATTERY. *Civil action. Two assailants. Separate liability.*

   In the absence of evidence of a conspiracy between plaintiff's assailants, their acts not being joint, a plaintiff cannot recover in a civil suit for an assault and battery against one of them because of injuries inflicted by the other.

2. SAME. *Conflicting instructions.*

   A plaintiff's instruction authorizing such a recovery is not cured by one, given at defendant's request, informing the jury that defendant is not liable for the acts of the other assailant.

3. SAME. *Weapons. Not deadly per se. Manner of use.*

   The manner in which a weapon, not deadly *per se*, was used determines its character, and a charge to the jury, in a civil action for assault and battery, disregarding the manner of its use, its character being material, is erroneous.

4. SAME. *Insults. Use of stick.*

   While insulting words will not excuse or justify an assault and battery with a deadly weapon, yet a party insulted may use a stick, if he do not use it in the manner of a deadly weapon.

FROM the circuit court of, first district, Carroll county.

HON. WILLIAM F. STEVENS, Judge.

Heggie, appellee, was plaintiff, and Stone, appellant, and another were defendants in the court below. From a judgment in favor of plaintiff against the appellant defendant appealed to the supreme court. The suit was dismissed as to the other defendant.

*Frank Johnston, J. N. Flowers, A. A. Armistead, E. D. Stone* and *Stone & Stone,* for appellant.

The jury were told by plaintiff's third instruction, unconditionally, to find for the plaintiff, if in fact the defendant struck the plaintiff with a stick in the second encounter, and if Dave Stone assaulted the plaintiff. This takes no account of any facts in justification, but proceeds on the one isolated fact of the assault. The instruction is directed expressly to the second encounter. It is not cured by the defendant's second instruction, but is in conflict with it.

It cannot be supposed that a jury can reconcile conflicting instructions, or harmonize instructions which apparently, and on their face, announce different rules of law.

It brings Dave Stone's assault in also as a basis for a recovery, although this occurred after appellant struck plaintiff in the second encounter.

The acts of Dave Stone may possibly have been part of the *res gestae,* but it could not be made the basis of a recovery either in whole or in part.

There was no conspiracy between I. B. Stone and Dave Stone, and the participation of the latter in the encounter was entirely independent of the action of appellant, and for which he was in no way responsible.

The second, fourth, fifth, sixth, and seventh instructions for the plaintiff are all erroneous in regard to the character of the weapon used, which was an ordinary walking stick.

The stick was not *per se* a deadly weapon. It may be conceded that it was for the jury to decide whether an instrument indifferent in itself is a deadly weapon. But this is to be determined by two essential facts:

One is the precise character and nature of the instrument, and the other, which is just as important and essential, is the precise manner in which it was used.

These observations are directed especially to the sixth instruction, which, while it told the jury that it was their province to determine whether the stick was a deadly weapon, entirely ignored the essential considerations by which this question is to be determined by a jury.

The fourth, fifth, sixth, seventh, and eighth instructions are erroneous in disregarding the manner in which the stick was used. It is not correct law, that a party insulted may not use a stick when it is not used in the manner of a deadly weapon. *Skidman* v. *State,* 43 Tex., 93; *State* v. *Huntly,* 91 N. C., 617; *Hunt* v. *State,* 6 Tex. App., 663; *People,* v. *Rodrigo,* 69 Cal., 601; *Pittman* v. *State,* 25 Fla., 648; *Stevens* v. *State,* 27 Tex., 461.

The defendant did not, in fact, use the stick as a deadly weapon. He struck with the small end, and only struck one blow at the second encounter, and probably two at the first assault. The injury inflicted was slight. There was no effort made to follow up the attack. The blow did not knock Heggie down on either occasion.

*Hill & Sisson,* for appellee.

Before the enactment of our statute, words, no matter how insulting, would not justify assault and battery, and we can go no further than the statute, which limits the defense to assault or assault and battery.

It is contended that *Wood* v. *State,* 64 Miss., 761, applies. It is true that the syllabus bears out the contention, but the opin-

ion does not bear out the syllabus, and it would be taking a long step from the common law to justify a felony by "insulting words," and if they can justify an assault with a deadly weapon, they justify the taking of human life.

So far as Dan Stone is concerned, he and his acts constitute part of the *res gestae* and the story would be incomplete without Dan and his performances.

There can be no serious objection to stating the facts of the transaction in the instructions and telling the jurors if they believe them to find for the plaintiff, and to fully do this it was necessary to mention Dan and his acts, because he was on hand at both fights and promptly took part. It is immaterial whether he did this of his own motion or by agreement with appellant, his father.

The facts of the second fight are few, hence the third instruction is short, and although it recites what Dan Stone did, yet the jury was instructed that the suit against Dan had been dismissed and plaintiff could recover nothing for what he did, and of course his acts were only considered as part of the *res gestae*.

Much is said by appellant about "deadly" and "dangerous weapons," and it is contended that the jury was not permitted to decide the character of the weapon used. We respectfully submit that in each instruction on the subject the decision of that subject was left to the jury and one instruction for the plaintiff, at least, dealt entirely with that question.

It is not left in doubt, and it is not contended that Stone tried to shoot Heggie with the stick, but struck him with it. The stick was before the jury and ought to be in this court, but the description of it is in the record, and whether Stone struck him with the "big" or "little" end is in controversy.

It is well settled that mere blows with the "fist or foot" will not justify the use of a deadly weapon in repelling such assault and an insult cannot be resented in such a way.

Argued orally by *J. N. Flowers* and *Frank Johnston,* for appellant.

PRICE, J., delivered the opinion of the court.

This is a suit for damages in the circuit court of Carroll county by I. R. Heggie against I. B. and Dan Stone jointly, and grew out of assault and battery. In the fight I. B. Stone used a walking stick and Dan Stone used his fist. There were two separate assaults within an hour of each other, and two counts in the declaration; one upon each assault. Before the trial of the case in the court below, plaintiff dismissed his suit against Dan Stone, and elected to proceed against I. B. Stone alone. There is no pretense of any conspiracy on the part of the Stones to attack Heggie. There were others engaged in the fight.

The court gave for plaintiff below the following instruction:

"No. 3. The court instructs the jury, for the plaintiff, that if they believe that after the difficulty in the courthouse that Dan Stone and I. B. Stone and John Heggie and A. L. Heggie had another difficulty in front of Hawkins & McConnico's store, and just as this difficulty was over, plaintiff, I. R. Heggie, as he walked out of Henry Nelson's store asked, 'What is the matter out here?' and that he walked south toward Hawkins & McConnico's store, and that there he was assaulted by I. B. Stone with a stick, and struck over the head with it, and also assaulted by Dan Stone, and knocked into the alley between Hawkins & McConnico's and Nelson's, then they should find for the plaintiff on the second count in the declaration, and assess his damage at such an amount as they see proper, not to exceed in amount $3,000."

This instruction saddled upon I. B. Stone liability for the assault of Dan Stone upon the appellee. To relieve defendant Stone from this burden, the court gave defendant the following instruction:

"No. 7. The court instructs the jury that in this case I. B.

Stone cannot be held responsible in damages for the acts and conduct of Dan Stone in evidence."

These instructions are in open conflict and misleading. The court also gave for plaintiff the following instructions:

"No. 6. The court instructs the jury that it is their province to determine whether the stick introduced in evidence as the one used by I. B. Stone in assaulting I. R. Heggie is a deadly weapon, or one capable of producing great bodily harm."

"No. 7. The court instructs the jury that insulting words will not excuse or justify an assault with a deadly weapon, one capable of producing great bodily harm."

The defense relied upon to justify the assault was insulting words. Where a party relies upon insulting words to justify an assault with a weapon not a deadly weapon *per se,* the question as to whether the weapon used was a deadly weapon or not depends upon the character of the weapon and the manner in which such weapon was used. The sixth instruction is erroneous in disregarding the manner in which the stick was used. It is not the law that a party insulted may not use a stick, when it is not used in the manner of a deadly weapon. The seventh and eighth instructions given the plaintiff below are subject to the same criticism, and this error is not cured by the sixth instruction for the appellee, which instructs the jury that it is their province to determine whether the stick introduced in evidence is a deadly weapon, capable of producing great bodily harm. In *Pittman* v. *State,* 25 Fla., 648, 6 South., 437, cited by counsel for the appellant, the court said: "That any weapon is a deadly weapon which is likely to produce death, but a weapon capable of producing death is not necessarily a weapon likely to produce death." In *Skidmore* v. *State,* 43 Tex., 93, the court held that, where a weapon was not *per se* a deadly weapon, the mode and manner in which it was used will determine its character as such. We approve this doctrine. *People* v. *Rodrego,* 69 Cal., 601, 11 Pac., 481.

*Reversed and remanded.*