## City of Jackson *v.* Brummett.

No. 39695          June 13, 1955          80 So. 2d 827

E. W. *Stennett, W. T. Neely,* Jackson, for appellant.

*Jackson & Ross,* Jackson, for appellee.

504

APPELLANT IN REPLY.

ETHRIDGE, J.

This is a suit against a municipality for its alleged negligence in parking and tying down an airplane at its airport, as a result of which the plane was damaged when the ropes securing it broke during a heavy wind and the plane turned over.

Appellant, City of Jackson, owns and operates the Jackson Municipal Airport, known as Hawkins Field. The City equipped, and maintains and operates the airport under the authority of Code of 1942, Sec. 7538. Appellee, Mrs. Gladys Roper Brummett, plaintiff below, owned a Cessna Model No. 170 airplane, which she parked at the airport. The manager of the airport was Bob Neblett. Neblett, acting for the City, made an oral agreement with appellee and other owners of airplanes to furnish them a parking place for their planes, to the east of the administration building, and to furnish "tie-down service" for such planes. The jury was warranted in finding that before May 30, 1949, appellee's plane had been parked and tied down in the designated area by a city employee. This was done by the use of three ropes, one each from the right and left wings and another rope at the rear of the plane. These were tied to three u-shaped steel bars embedded in the concrete.

In the late afternoon of May 30, 1949, with very little warning, the wind increased in velocity from 7 mph to 45 mph, and, according to the U. S. Weather Bureau Station located at the airport, there were wind gusts up to 65 miles per hour. According to appellee's witnesses the ropes which had been used by appellant's employee to tie her plane down were rotten and worn-out. Appellant's evidence was to the contrary, but this made an issue for the jury. The jury was warranted in finding that as a result of the rotten and worn-out condition of the ropes, the plane was broken aloose from its moorings, and blown over and upon another plane parked nearby. None of the other seven planes parked in the

immediate area and tied down by appellant was damaged, although two of the ropes were broken on one and one rope on another. There was also a conflict in the evidence as to the velocity of the wind. The jury had the right to accept the report of the U. S. Weather Bureau.

██ ██ Issues properly submitted to the jury were whether appellee's husband had delivered the airplane to appellant, whether appellant's employee had parked and tied it down, and whether appellant negligently used defective ropes in tying down the plane.

Appellant argues that appellee failed to prove that she had a valid parking and tie-down contract with the City; that the agreement, if any, was oral and made with Neblett, manager of the airport; that appellee did not show that Neblett was authorized by ordinance of the City Council to make such agreements; and that there can be no implied power in Neblett to contract for the City. This case was first before the Court in 1951, in Brummett v. City of Jackson, 211 Miss. 116, 51 So. 2d 52. The circuit court had sustained the City's pleas in bar that it had no power or authority to make a tie-down contract, and that even if it did, the City had relieved itself of liability by declaring in an ordinance and by a notice posted at the field that the City was not responsible for loss of property. It was held that Code Sec. 7538 gave municipalities the power to acquire, equip and maintain an airport, and this included the authority to "operate for income"; that in the operation of the airport the City was acting in corporate and not a governmental capacity; and that plaintiff had not made any contract to relieve the City of liability for negligence.

██ ██ The power to maintain and operate an airport being expressly vested in appellant, we think that such power would also include, as necessary and ancillary thereto, the power to contract with owners of airplanes to furnish them parking and tying-down facilities at the

airport. It is undisputed that Neblett was the general manager of the airport for appellant. So for these reasons the appellant's agreement with appellee to park and tie down her plane was a valid bailment and service contract. ▮▮ And when the bailee City, acting in its corporate capacity, negligently tied down the plane with rotten and worn-out ropes, it became liable for damages resulting from such negligence.

▮▮ Appellant argues that the sole, proximate cause of the damage to the plane was an act of God, a sudden, extraordinary and unprecedented wind. No one is liable for an injury proximately caused by an act of God, which is an injury due directly and exclusively to natural causes without human intervention, and which could not have been prevented by the exercise of reasonable care and foresight. But an act which may be prevented by the exercise of ordinary care is not an act of God which would immunize a tort-feasor from liability. City of Hattiesburg v. Hillman, 76 So. 2d 368, 370 (Miss. 1954).

▮▮ The jury was amply warranted in finding that the damage to appellee's airplane was not due exclusively to natural causes, and that it could have been prevented by the exercise of reasonable care and foresight on the part of the City in providing adequate ropes to tie the plane down and by the exercise of ordinary care in that respect. There is no merit in the other assignments of error.

Affirmed.

*Roberds, P. J.,* and *Lee, Arrington* and *Gillespie, JJ.,* concur.